# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLIN SHAMOEILYAN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0046-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 8 and 9), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 20 and 24).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

1

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1  Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2  If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3  If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted;

Step 4  If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

2

| | |
|---|---|
| Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///
///
///
///
///
///
///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 2, 2013. See CAR 12.[1] In the application, plaintiff claims disability began on July 1, 2010. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 6, 2015, before Administrative Law Judge (ALJ) Trevor Skarda. In a September 17, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative joint disease, carpal tunnel syndrome, degenerative disc disease, and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 14-19.

After the Appeals Council declined review on November 4, 2016, this appeal followed.

## III. DISCUSSION

In her motion for summary judgment, plaintiff argues the ALJ failed to provide sufficient reasons for rejecting her statements and testimony as not credible and for rejecting the opinions of treating physician, Dr. Ghahramani.

///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on August 17, 2017 (Doc. 13).

4

### A. Credibility Assessment

At Step 4, the ALJ evaluated the credibility of plaintiff's statements and testimony to assess plaintiff's residual functional capacity. See CAR 16-17. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

///

6

As to plaintiff's credibility, the ALJ summarized plaintiff's statements and testimony as follows:

> The claimant has indicated that she is unable to work due to her degenerative joint disease, carpel tunnel syndrome, degenerative disc disease, and obesity. The claimant stated that she has pain in her wrists, her left shoulder, and throughout her back (Hearing Testimony). The claimant also stated that she suffers from a tingling sensation in her hands (Hearing Testimony). The claimant also stated that she has various limitations due to her impairments. The claimant stated that she has difficulties fastening buttons, working zippers, tying shoes, and bending over (Hearing Testimony). She also stated that she can lonely [sic] walk for two to three blocks before needing to rest for 10 minutes, and that she can only lift small objects like a coffee pot or a book (Exhibit 3E at 2). The claimant also stated that she needs to use splints and braces to help ease her pain (Exhibit 3E at 3). However, despite these alleged limitations, the claimant stated that she can take care of her five-year-old daughter and do some light cooking (Hearing Testimony). The claimant also stated that she is able to driver [sic] her daughter to school (Hearing Testimony).

CAR 16.

Regarding plaintiff's alleged limitations resulting from degenerative disc disease and obesity, the ALJ stated:

> . . .[T]he record does not support the degree to which the claimant alleges to be limited. Upon examination, the claimant was consistently found to have a normal gait (Exhibit 2F at 7, 6F at 3, 10F at 6, and 21F at 7). Similarly, the claimant was found to have 5/5 strength in all extremities (Exhibit 2F at 7 and 4F at 7), and recorded negative straight leg raises (Exhibit 4F at 3). . . .

Id.

The ALJ also noted the same evidence as well as findings indicating plaintiff's grip strength of 30 pounds in finding the record does not support plaintiff's alleged degree of limitation resulting from degenerative joint disease and carpal tunnel syndrome. See id. at 17. Overall, the ALJ found plaintiff's ability to care for her five-year-old daughter, drive, and do light cooking also undermine her credibility. See id. at 16-17.

/ / /

/ / /

/ / /

/ / /

7

Plaintiff argues the ALJ erred in relying on activities of daily living to discount her credibility. According to plaintiff:

> Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but then concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible for the reasons explained in the decision. AR 16. Apparently, the ALJ found Ms. Shamoeilyan less than credible because she "stated that she can take care of her five-year-old daughter and do some light cooking (Hearing Testimony). The claimant also stated that she is able to drive her daughter to school (Hearing Testimony)." AR 17.
> First, Ms. Shamoeilyan specifically testified that her older daughter (17 years old) and husband did the household chores and cooking. . . "Thank you God." AR 39-40. She indicated that she only prepared simple things like an egg or heating up a hot dog. She could not chop vegetables or anything like that. AR 39. She spent most of her day watching TV, watching her five year old, and sitting. She also took a nap. AR 40. She was always tired. AR 41. She drove an automatic a few blocks to pick her daughter up from school but most of the time she stayed home. She indicated she had difficulty driving but had to give her daughter a ride. AR 43. She testified that she did not drive on the freeway. She similarly reported to Social Security that on an average day "I don't do much due to my condition. My daughter do all chores." AR 160. She reported that her husband did the grocery shopping. AR 161. She concluded by stating that her husband and daughter helped her when her hands got numb and she started dropping things. AR 162. She wore braces on both wrists unless she was washing her hands or doing something that would get them wet. AR 33. She had difficulty buttoning and using zippers because of the tingling and numbness in her fingers. She was not able to tie her shoes because of her hands and because she could not bend over due to her back pain. AR 33-34. She had problems with her back and right knee. AR34. She was not able to unscrew lids off jars. She got help from her family. She was not able to grasp and pick things up with her hands because of the tingling and numbness. AR 35. When she tried to do something that involved moving her head it hurt much more. AR 36. She also had pain in her shoulders which prevented her from raising her arms more than half way up. AR 37.
> Based on Ms. Shamoeilyan's testimony, statements, and treatment record, she was very limited in what she could do. Moreover, she got a lot of help from her older daughter and husband. Nor was there any evidence regarding what was entailed in watching her young daughter. The evidence in the record documented a severely impaired, morbidly obese, 52 years old with significant functional limitations. She lived a sedentary, and restricted life.

Because the record does not reflect any evidence of malingering, the ALJ's reasons for discounting plaintiff's credibility must be clear and convincing. See Lester, 81 F.3d at 834; see also Carmickle, 533 F.3d at 1160; Travizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). The court finds the ALJ's reasoning neither clear nor convincing. The ALJ relied largely

on plaintiff's ability to care for her five-year-old daughter, drive, and do light cooking to discount the credibility of her statements and testimony. See CAR 16-17. The ALJ, however, did not account for evidence showing plaintiff receives assistance from her 17-year-old daughter and husband in doing many of these tasks.

Specifically, at the administrative hearing plaintiff testified:

> Q: And can you give me an idea of what a typical day is like for you?
>
> A: I watch my little one. And I do lightly in the something in the home or for my, I watch TV, I rest.
>
> Q: Okay. Do you cook?
>
> A: Not that much. My husband do. And I, I have a daughter, she's older than other one, she's – and I do lightly cooking, cooks. And but my husband helps me and my daughter, they helped us.
>
> * * *
>
> Q: -- what do you do?
>
> A: Now, for I cook egg or lightly foods, hot dog or something like that.
>
> Q: What about the chores around the house? Like dishes, laundry?
>
> A: No, no.
>
> Q: You don't do any of those?
>
> A: No.
>
> Q: Do you make your bed?
>
> A: It's hard, hard, heavy to me. My hand, I'm not doing that much heavy.
>
> Q: Okay. Your husband and your daughter do this –
>
> A: Yes, yes.
>
> Q: -- household chores?
>
> A: My husband too much helping me. Thank you, God.

CAR 39-40 (hearing transcript).

///

9

Similarly, in a form entitled "Exertional Questionnaire Since Your Disability Began," plaintiff stated: "daughter do all chores." CAR 160. As to grocery shopping, plaintiff reported: "My Husband does that." Id. at 161.

As to driving, plaintiff reported on the same form that she drives at most ten minutes to take her daughter to school. See CAR 161. This statement is consistent with her hearing testimony:

> Q: Okay. Do you drive?
>
> A: Yes.
>
> Q: And –
>
> A: Just, not, just in the two block. Just pick my daughter in the school and not that much. 14, 15 minutes, I'm not driving in highways and other places. Just two block.
>
> Q: Do you have any difficulty driving?
>
> A: For the seating, moving, yeah. But still I have to do ride, you know.
>
> CAR 42-43.

To the extent plaintiff receives substantial assistance from her older daughter and husband in performing the activities of daily living referenced by the ALJ, such activities do not necessarily reflect plaintiff is able to spend a substantial part of her day engaged "in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The matter will be remanded to the Commissioner for further consideration of plaintiff's statements and testimony.

**B.      Evaluation of the Medical Opinions**

At Step 4, the ALJ also evaluated the medical opinion evidence in determining plaintiff's residual functional capacity. See CAR 17. In particular, the ALJ gave controlling weight to the opinions of consultative non-examining reviewing physicians, Drs. Bugg and Bullard, who both concluded plaintiff has the residual functional capacity to perform light work. See id. The ALJ rejected the opinions of treating physician, Dr. Ghahramani. See id.

///

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,
///

1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Ghahramani, the ALJ stated:

> Little weight is given to the medical opinion given by Edmond Ghahramani, M.D., in June of 2014 (Exhibit 9F). Dr. Ghahramani stated that the claimant can lift less than 10 pounds, can stand or walk for less than two hours a day, can occasionally do postural activities, and has limitations in her ability to do manipulative activities (Exhibit 9F). This opinion is given little weight because the doctor does not support his findings with evidence and because he does not say what the manipulative limitations are.

CAR 17.

Plaintiff argues this analysis is flawed.

The court agrees. Primarily, the ALJ rejected Dr. Ghahramani's opinions because he found them unsupported by objective evidence. See id. A review of the doctor's report at Exhibit 9F, however, reflects he cited numerous objective findings in support of his assessment. See id. at 289-291. Specifically, Dr. Ghahramani cited: (1) cervical radiculopathy; (2) rotator cuff tendinitis; (3) abnormal EMG; (4) herniated disc in C6; and (5) positive Hawkins in the left shoulder. See id. at 289. The court rejects defendant's argument "the fact that Dr. Ghahramani referred to them is not support for his assessed limitations." To the contrary, objective evidence of tendinitis, an abnormal EMG, a herniated disc, and positive Hawkins all support the doctor's functional opinions. Rather than explaining how they in fact do not, the ALJ erroneously rejected the doctor's opinion as conclusory and unsupported.

Given these explicit references to objective medical evidence of record, the court finds the ALJ's conclusion that Dr. Ghahramani's opinion is unsupported is flawed because it is not based on substantial evidence. Finally, to the extent the ALJ discounted Dr. Ghahramani's opinion because "he does not say what the manipulative limitations are," it would seem this statement of uncertainty should have triggered the ALJ's duty to further develop the record in this

///

///

///

regard.[2]

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 20) is granted;

2. Defendant's motion for summary judgment (Doc. 24) is denied;

3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: September 26, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

---

[2] The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

13